Henry Techshell. I'm here on behalf of Appellant Techshell, Incorporated, seeking your assistance in correcting what we see as the Board's improper affirmance of the rejection of Claims 1-8 and 26-39 Techshell Patent, 7907-400, the 400 patent. During the re-examination, the claims that I mentioned were rejected under an obviousness, a combination of references, and as set forth in our brief, we feel that there are deficiencies in how the individual references are applied to those elements as well as the motivation to combine. I'd like to start this morning with the secondary reference, the Genest reference, which is applied to the tabs feature of appellant's claims. The examiner found that the Genest teaches a case with retaining tabs which function to retain a handheld computer and said that that was relevant to appellant's claims. We questioned that finding and the Board affirmed it and then specifically found clearly the Genest are disclosed therein as functioning to retain a handheld computer and I'm referring to the Board's decision on page 12, which is the appendix of page 12, but that's not what the claim language of appellant's claims recite. Appellant's claims are directed to a first elastic planar element, and I apologize, you've heard planar support, now you're going to hear planar element, a first elastic planar element, which includes a plurality of tabs that are configured so as to grip the display portion. There's a corresponding second elastic planar element, including a plurality of tabs configured so as to grip the keyboard portion. In discussion of Genest, the Board reaches a conclusion that Genest discloses retaining the handheld computer without disclosing or describing how it's applying retaining the handheld computer or how one of ordinary skill in the art would understand retaining the appellant's claims. It's just, it's simply missing in the way it addresses. It affirms the examiner's conclusion, which is, again, similarly recites to retain a handheld computer. And this is important, as we'll talk in a second, Genest is directed to rigid protrusions and I'm referring to our brief at page 30, as well as the Genest patent beginning at column 13, lines 42, and the Genest figure 1. Essentially what you have is a case for a handheld computer, and at one side of that case are some protrusions that extend out. Now at the other side of the case is a removable portion. That removable or slideable portion is moved, the handheld is then slid under these retaining portions, and then the case is re-engaged against the handheld computer, and then latched against the handheld computer to hold the handheld computer, and has the board determine that those retaining tabs assist as part of retaining the handheld computer, but they don't, doesn't specifically address that they grip the handheld computer, and it doesn't specifically address, as we also point out in our brief, that the tabs in Genest don't move or deform. I'm sorry. They don't move or deform. Part of the issue with the tabs element is when applying the tabs element of our patent claims to Genest, the board determined that we were trying to read terms into the patent claims. We argued that we're not. Genest only discloses these rigid structures. Our tabs are part of an elastic, an elastic planar element, and these tabs are configured so as to grip the display portion. So we're not trying to read elements into the claim. Inherent in the recitation of elastic and grip to the tabs is some ability by the appellant tabs to move or deform, and that is missing from Genest. The board... And so, in your view, your invention with regard to the tabs is what? The combination of elements with the first elastic planar element that's placed on the outside of the display portion, and the second is placed on the outside, and they're separate and independent, as we'll talk in a minute, that's a separate element. Yeah, no, I'm just talking about Genest. I'm just trying to follow your argument on that. The tabs portions, there's a plurality of tabs for Claim 1 or a tab for Claim 39, but the arguments are the same for both, that are configured so as to grip the display portion. There is an elasticity to the tabs that allows them both to deform and to grip. And that's... So you're saying that the tabs in your patent, as opposed to Genest, have a different function, are made of different material? What is... I believe it would be both. Structurally, it's an elastic material where the tabs of Genest are rigid and functionally in how they operate and how they accomplish what the structures are designed to do. The Genest tabs are part of a system for retaining, whereas our tabs are essentially the retaining mechanism due to the elasticity to grip. So the distinction is gripping versus holding? Versus being part of a system to retain the handheld computer. The board acknowledges that it's part of a variety of components that retain the handheld computer, but it doesn't say these tabs themselves specifically grip the computer. Is there any distinction in terms of the consequence of holding or gripping, or retaining and gripping? I believe there can be, and I believe that the board, by failing to address that, relies or doesn't provide a full articulated reasoning with the rational underpinning for why our claim elements are met, because it doesn't address the gripping function. It doesn't say what one of Ordinal's skill in the art would understand would be the same or different in this context. It just doesn't address it. Additionally, as noted in our brief, our tabs deform whereas the tabs of Genest do not. Is there a specific deform language in the claims? No, Your Honor. As indicated in here, in recitations of both elastic for the planar elements of which the tabs are Those two things imply deformable. Turning to the primary reference, which is the Alexander reference. The Alexander reference is directed to a carrying case, a unified case with a connector mechanism, which is a part of the case, into which a laptop is inserted. The board, in affirming the examiner's, that was one of the disputes with the examiner. The examiner said that Alexander disclosed and taught and suggested one of Ordinal's skill in the art. This separate and independent, these unconnected two portions of a laptop cover that we claimed, and we disputed that. The board, in addressing that point, summarily agrees and affirms the examiner's conclusions. Then, instead of addressing the portions of the record raised by the appellant that refute the examiner, attempts to write them out of the patent. The board found that the paragraph cited by the appellant, column 5, beginning at lines 37 of Alexander, where it says that the lower case body and case cover of the case, which is movably mounted to the case body, add a connector mechanism, which is a part of the case of the laptop computer. We relied on the explicit disclosure that the connector mechanism is a part of the case. The board, at page 8 of its opinion, which is the appendix of page 8, attempts to erase that sentence and say that that's a typographical error. It does this because, according to the board, the laptop computer L in Alexander does not have a carrying case. However, that decision is refuted a few lines later and elsewhere within the patent. Again, at column 5, beginning at lines 57, Alexander notes that the particular type of laptop computer L to be mounted in the case. So, contrary to the board's finding that the paragraph or sentences above are a typographical error because the laptop computer does not have a carrying case, Alexander says in that same paragraph and in the next column, the particular type of laptop computer L to be mounted in the case. And then again in column 6, beginning at line 57, discussing these add-on cards that may be inserted into the laptop computer L while the computer L is mounted within its transport case. So, clearly the board is trying to say that it's a typographical error and read out the evidence in the record that is unfavorable to the examiner's opinion. And the basis it offers for doing so is contrary to the express statements of Alexander. Alexander discloses a carrying case. It says carrying case or transport case more than a dozen times through the body of that patent and in fact claims a carrying case with said case having a lower body and a case cover movably mounted with said lower case body to open and close said case. The board again tries to read this limitation out based on its prior saying that it's a typographical error and again tries to just change the priorities. Instead of addressing the limitations and the record, it attempts to change it. Our position is the board cannot simply substitute its own conclusions for what prior art ought to disclose, for what it actually does disclose. Thank you. May it please the court. I'd like to pick up from where he left off in closing counsel regarding the Alexander, what Alexander discloses and what the board was doing when they were reading Alexander. The board was simply looking at the reference in context when the board found that there was a typo. And if we turn to A61 and we look at the typo, we see that it says the case C of the portable... Is this line 38? Oh yes, sorry. This is column 5, line 38. So we see it says the case C of the portable computer system P includes a lower case body 200, a case cover 200 which is movably mounted to the case body 200 at a connector mechanism which is part of the case C of the laptop L. That language in and of itself is an aberration. Every other time it refers to the case, it says case C. Here it says case C of laptop L. That language doesn't appear anywhere else in the specification. Is it a typo or is it just badly drafted? I think it's a typo. I think they just meant to say is a part of the laptop L and included the case C as a typo. But whatever it is, if we look at figure 3 and we can look at the figures as... Where's the connector on figure 3? There is no connection in figure 3. Alexander doesn't show any connection. The only connection that it shows between the case body and... No, I don't. I guess what I'm asking is the connector is on the computer. Right. It's on the laptop L. It's 204. Correct. Figure 3 shows all the gory details. It shows the little screws. It shows every tiny piece. And it shows no connection. So opposing counsel has argued that the board is not reading the reference in the correct way but it still hasn't pointed to any connection or any unification in Alexander. The only connection that is disclosed in Alexander is on laptop 204. And there's clearly shown pieces 200 and 202. Then as far as the tabs of Ginesse, one thing that they didn't argue was that Alexander is properly elastic. So when the board made their decision, they combined Alexander and Ginesse. So they would be putting the tabs of Ginesse into Alexander. They found that was routine in the art that tabs to hold a device are well known and they were incorporating those tabs into Alexander. So the tabs of Ginesse don't need to be elastic since there is a concession that the Alexander is elastic. Additionally, the deform or move part is not in the claims anywhere. And all of the tabs are having the same function as in Ginesse. They're retaining. There's not any difference between and there hasn't been argued that there's a difference between retaining and gripping. The tabs of Ginesse are perfectly able to hold in the device which is the same function that is being performed by the tabs of the claimed invention. Is there no further questions? If the question is what Alexander teaches, assume with me for one moment that the sentence that you've been discussing teaches a connector on the case.  The connector, including the next sentence, teaches a case without a connector between the two case components. I think that's a perfectly reasonable way of reading it. You could say that there's two embodiments and it clearly shows one embodiment where the connector is just the laptop. I'm just going to play the counsel's points in reverse order. She pointed out that the Alexander reference was combined with the Ginesse reference and she says that the Alexander reference was elastic. Well, that's not exactly true. There's no discussion in either the examiner's opinion or the board's as to how these specific tabs of Ginesse would achieve this. It was just a generic benefit that it would have been a motivation to combine so that the protective cover can be more securely attached to the laptop which would improve on the prior art technique of Alexander using only friction. There's no discussion about how that's going to be achieved with the tabs of Ginesse. Ginesse discloses these rigid protrusions. The carrying case of Alexander, which is, like I said, referred to throughout Alexander as a carrying case that receives the laptop, is disclosed as having openings in the two halves that are either substantially equal or slightly larger than the display and keyboard of the laptop. Essentially, you have openings that are roughly the same size as the laptop that's to be fitted into this carrying case so that, as Alexander discloses, the laptop may be firmly fitted. If you have a case that is dimensioned such that it's going to firmly receive the exact dimensions of the laptop and then you add a bunch of rigid tabs around the side that, according to Ginesse, work when you move part of the case out of the way, slide the handheld in, and then reattach the case and lock it, how these precisely dimensioned case portions of the carrying case in Alexander are going to operate with these tabs isn't explained and we would argue would render Alexander inoperable. In the very minimum, Alexander teaches away from this sort of combination because it does have the very precise dimensions for its casing. Additionally, with respect to Figure 3, as reflected in Alexander, Figure 3 is an exploded view. It is one of nine figures. It is not intended to display. It shows features that, as the Court is aware, exploded views can show features in the either construction or manufacture or otherwise of the invention that doesn't necessarily reflect how the final invention is going to look. It's an exploded view to show certain features. It doesn't say that the only connector in Alexander is the laptop. It doesn't say that. But as long as it shows at least one embodiment where the connector is the laptop, isn't that enough to teach a case that lacks itself a connector? It could, if that's what Alexander discloses. We would argue that there is no separate embodiment in Alexander. Alexander is showing an exploded view to show more detail and the sentence that the Board tried to read out, that the connector mechanism, which is part of the case C of the laptop computer L, there's no indication that the laptop is itself the connector. This is a case in which the specific language says a suitable connector mechanism, for example, is provided in the form of a pair of hinged or pivoted connectors at rear sides of the laptop computer L, which is reference 204 that points to the laptop, not to the case. Yes, Your Honor, and we would argue that that's an example of connector mechanisms. It doesn't say it has to be the connector mechanism, and it's an example of where the connector mechanisms can be located. At various portions of Alexander, it talks about the ability to open both the case and the computer. We're talking about Alexander column 2, lines 57 through 61. So there are the carrying case, or he's talking about the computer system and the carrying case when both are open. So there's the ability to open both separately, which would indicate that, as it says in column 5, the lower part of the case body and the case cover are movably mounted to the case body at the connector mechanism, which is a part of the case. And that's consistent with claim 1, which is what Alexander claimed in that claim. In claim 1, it doesn't claim laptop as a connector. It says computer system with a case, said case having a lower body, and a case cover movably mounted with said lower case body to open and close said case. And then claim 1 goes on to recite that the display panel part of the laptop is mounted in or within the case cover. So clearly Alexander is talking throughout this disclosure a unified case cover that receives a laptop. And it is connected, the two portions are connected and are not separate.